1. Municipal Corporations — Cities and Towns—Nuisance—Sewage
—Damage to Lands—Governmental Functions.

Where a municipality is liable in damages for the improper
emptying its sewage in a stream to the injury of an adjacent
or adjoining owner, the damages are admeasured by the decrease
in value of the lands thereby caused, though the act complained
of was done by the municipality in the exercise of its govern-
mental functions.

2. Same—Eminent Domain—Permanent Damages.

Where a city by emptying its sewage into a stream by im-
proper methods causes injury to an abutting or adjacent owner,
the damages are of a permanent character and protected by the
municipality's right of eminent domain, which, in such instances,
is in the nature of acquiring an easement in the lands; and as the
public interest therein deprives the owner of the right to abate
the nuisance, it is open to either of the parties, in the owner's
action for damages, to demand that permanent damages be
assessed; and the mere fact that the municipality may volunta-
rily abate the nuisance in the near future does not deprive the
owner of his right to recover permanent damages in his present
action.

3. Municipal Corporations—Sewage—Nuisance—Damages to Lands
—Adjacent Owners.

The right to recover damages of a municipality caused by its
improper method of emptying its sewage into a stream is not con-
fined to adjoining lands lying thereon, for this right extends to
adjacent lands injured thereby, whether the medium of pollution
is through the water or through that of the air carrying objec-
tionable and contaminating odors, etc., resulting in a serious
injury to or a reduction in the value of lands.

4. Appeal and Error—Both Parties Appeal—Harmless Error.

Both parties to this action have appealed to the Supreme
Court, and the ruling of the court in the appeal of one having
rendered harmless any error insisted upon in the other, the ap-
peal of the latter party is dismissed.

BROWN, J., and CLARK, C. J., dissenting.

APPEAL by defendant from *Lyon, J.,* at January Term, 1913, of DURHAM.

Civil action to recover damages for the maintenance of an actionable nuisance on part of defendant in the construction and operation of its sewerage system.

On issues submitted, the jury rendered the following verdict:

1. Are the plaintiffs the owners of the land described in the complaint? Answer: "Yes."

2. Has the plaintiffs' land been damaged by the installation and maintenance of the sewerage system, as alleged in the complaint? Answer: "Yes."

3. What permanent damages are plaintiffs entitled to recover, if any? Answer: "$200."

4. What damages, if any, are plaintiffs entitled to recover up to the beginning of this action? Answer: "5 cents."

Judgment on verdict for the permanent damages, and defendant excepted and appealed.

*Manning, Everett & Kitchin for plaintiff.*
*Bryant & Brogden and C. S. Scarlett for defendant.*

HOKE, J. We have held, in several recent cases, that damages may be recovered for a wrong of this character, and, to the extent that the value of plaintiff's property is impaired, the right is not affected because the acts complained of were done in the exercise of governmental functions. *Donnell v. Greensboro,* 164 N. C., 331, and authorities cited.

Our decisions are also in support of the proposition that where the injuries are by reason of structures or conditions permanent in their nature, and their existence and maintenance is guaranteed or protected by the power of eminent domain or because the interest of the public therein is of such an exigent nature that right of abatement at the instance of an individual is of necessity denied, it is open to either plaintiff or defendant to demand that permanent damages be awarded; the proceedings in such cases to some extent taking on the nature of condemning an easement. *Brown v. Chemical Co., ante,* 421; *same case,* 162 N. C., 83; *Harper v. Lenoir,* 152 N. C., 723; *Geer v.*

*Water Co.,* 127 N. C., 349; *Parker v. R. R.,* 119 N. C., 677; *Redly v. R. R.,* 118 N. C., 996. A principle and method now made peremptory by statute, in case of railroads. Rev., sec. 394.

Speaking to the general principle, in the case of public roads, in Elliott on Streets and Roads, the author says:

"SEC. 488. All damages are recoverable in one action. The change of grade is a permanent matter, and all resulting injury must be recovered for in one action, for the property owner cannot maintain successive actions as each fresh annoyance or injury occurs. The reason for this rule is not far to seek. What is done under color of legislative authority, and is of a permanent nature, works an injury as soon as it is done, if not done as the statute requires, and the injury which then accrues is, in legal contemplation, all that can accrue, for the complainant is not confined to a recovery for past or present damages, but may also recover prospective damages resulting from the wrong. It is evident that a different rule would lead to a multiplicity of actions and produce injustice and confusion. It is in strict harmony with the rule which prevails, and has long prevailed, in cases where property is seized under the right of eminent domain."

These authorities and the principles upon which they rest are in full support of his Honor's judgment for the permanent damages awarded in the verdict.

It is contended for defendant that damages of this character should not be allowed, because the property of plaintiff does not abut directly upon the stream, and there has been no physical invasion of plaintiff's rights in the same; but this position, in our opinion, cannot be sustained. The property injured extends to within 50 yards of the stream, and the evidence tends to show and the jury has established that defendant wrongfully maintains there permanent conditions amounting to a nuisance, bringing plaintiff's property directly within the harmful effects and sensibly impairing its value. In *Donnell v. Greensboro, supra,* the Court, in speaking to a similar suggestion, said: "In such case, and except as affected by the existence of certain rights

peculiar to riparian ownership, a recovery does not seem to depend at all on whether the damage is carried through the medium of polluted water or noxious air; the injury is considered a taking or appropriation of the property to that extent, and compensation may be awarded." A position fully sustained by authority whenever, as in this case, the nuisance is of a permanent character and the source of injury is protected from interference by legislative sanction and the predominance of the public interests. *King v. Vicksburg, etc., Ry.*, 88 Miss., 456; *Gulf and Colorado R. R. v. Moseley,* 161 Fed., 72; *Terminal Co. v. Lellyett,* 114 Tenn., 368; *Middle Camp v. Ditch Co.,* 46 Col., 102; 21 A. and E. Enc., pp. 732-733; 1 Lewis Eminent Domain (3 Ed.), sec. 230. In the citation to A. and E., *supra,* it is said: "The same rule (damages for permanent nuisances) is applicable where the source of injury is permanent in its nature and will continue to be productive of injury independent of any subsequent wrongful act. The nuisances coming within the latter classification consist of the annoyance, discomfort, or injury necessarily incidental to the operation or conduct of a business or erection authorized by law; and the rule is applicable only when the plaintiff elects to consider the nuisance permanent, and therefore licenses it, or when the defendant's use of his property constitutes a *pro tanto* taking of the plaintiff's property." And in the citation to Lewis on Eminent Domain, *supra,* referring to the kind of injuries which may be treated as a taking of property, the author says: "The owner of land has a right that the air which comes upon his premises shall come in its natural condition, free from artificial impurities. This right has its correlative obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor dust, smoke, noxious gases, or other foreign matter which substantially affect its wholesomeness. This right is very fully treated by Mr. Wood in his work on Nuisances, and a reference thereto will suffice. The right to pure air is property, and to interfere with the right for public use is to take property. There can be no question that the erection of gas works, or the setting up of any other noxious trade, in the

vicinity of my premises that emits noxious odors, which are sent over my lands in quantity and volume, sufficient to essentially interfere with the use of that air for the ordinary purposes of breath and life, so as to constitute a legal nuisance, is such a taking of my property as the Legislature may not permit without compensation. What possible distinction can there be between the actual taking of my property, or a part of it, and occupying it for the erection of a railroad track or a gas house and invading it by an agency that operates as an actual abridgment of its beneficial use and possibly a complete and practical ouster? There certainly can be none. By the erection of such works a burden is imposed upon my property; the property itself is actually invaded by an invisible, yet a pernicious agency, that seriously impairs its use and enjoyment, as well as its value. The impregnation of the atmosphere with noxious mixtures that pass over my land is an invasion of a natural right, a right incident to the land itself, and essential to its beneficial enjoyment. My right to pure air is the same as my right to pure water; it is an incident of the land, annexed to and a part of it, and it is as sacred as my right to the land itself. Therefore I apprehend that the Legislature has no power to shield one from liability for all the consequences of the exercise of an occupation that produces such results, any more than it has to authorize the flooding of my lands or the permanent diversion of a stream. Legislative authority to carry on a business does not authorize it to be carried on in such a manner or at such a place that it will be a nuisance to neighboring property. An act which authorized a particular business at a particular place which necessarily defiled the air so as to create a nuisance would be void unless it was for public use, and, if for public use, such as manufacturing·gas for a city, would be ·subject to the constitutional limitation of making compensation."

And further in the same section: "Where a water, light, or power plant creates a nuisance by reason of gas, smoke, cinders, etc., an action will lie. And if the same is authorized by law for a public·purpose, the damage is a taking."

RHODES v. DURHAM.

It is further urged that the award of permanent damages may work an injustice, for the reason that the conditions complained of may be modified or altogether removed, and we were referred in the argument to an act of the Legislature giving the city of Durham the power to raise money for the purpose of improvements in its sewerage system; but, so far as plaintiff is concerned, there is nothing in the record that binds the city of Durham to take the course suggested, and there is nothing from the history of the case or the facts in evidence that gives plaintiff any just ground to believe that the nuisance will be abated at any time in the near future, or that should induce a court to stay or longer interrupt the methods of redress allowed him by the law.

There is no error, and the verdict on the judgment is affirmed.
No error.

PLAINTIFF'S APPEAL.

HOKE, J.   Plaintiff appealed in this case because of certain rulings of the trial judge on the issue as to recurrent damages. The judgment in his favor for permanent damages having been affirmed, on defendant's appeal, the questions raised by plaintiff are no longer material, and, plaintiff having stated in open court that he did not care to press his appeal here if the judgment in his favor should be affirmed, the same is therefore dismissed.

Appeal dismissed.

BROWN, J., dissenting:   I am of opinion that the plaintiff is not entitled to recover for permanent damages to his land under the allegations and evidence in this case.

The land does not abut on the creek, and is some little distance from it.   There is no allegation and no evidence that the crops have been damaged or the rental value of the land decreased, or any evidence tending to prove any permanent injury to the land itself.

The evidence shows that the defendant is maintaining a public nuisance by discharging untreated sewage into this creek, which causes foul odors and unhealthful conditions to the plaintiff's personal injury.   We have held repeatedly that cities and

towns are not liable for injuries to health nor personal discomforts arising from such causes. *Metz v. Asheville,* 150 N. C., 752; *Williams v. Greenville,* 130 N. C., 96; *Hines v. Rocky Mount,* 162 N. C., 409.

I do not think that any right to maintain a public nuisance by the pollution of a creek can be acquired by prescription. The judgment in this case cannot operate upon the land, and any subsequent owner or occupant of it, whether as owner or tenant, would have a right to bring his action to abate this nuisance, and to recover temporary damages for it.

I fail to find any case where permanent damages have been given by the courts where the plaintiff was not a riparian owner, and the raw sewage was discharged into a stream passing near the premises.

At common law no one could recover permanent damages arising out of the maintenance of a public nuisance. His remedy was either by injunction to abate it or by successive actions for damages as they accrued, and sometimes by both remedies. A case very much like this is *Comer v. City of Nashville,* 17 L. R. A. (O. S.), 468. In that case *Judge Lurton,* now on the Supreme Court Bench of the United States, says: "The weight of authority and the weight of reason alike condemn, as contrary to a true public policy, any rule by which a wrongdoer may thus procure a license to continue his misconduct. Such a rule would in many instances operate as a method by which private property would be condemned to private use against the will of the owner." It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, where the causing the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that, where the cause of the injury is one not presumed to continue, the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance.

The Massachusetts Court, in *Aldworth v. City of Lynn,* 10 L. R. A., 210 (O. S.), holds that only the damages that have accrued prior to commencement of an action can be recovered in action for damages for maintenance of nuisance on premises adjoining plaintiff's property. On page 211 the Court says:

"The plaintiff excepted to the ruling that she was entitled to recover damages only to the date of her writ, and contended that the dam and pond were permanent, and that she was entitled to damages for a permanent injury to her property.

"An erection unlawfully maintained on one's own land to the detriment of the land of a neighbor is a continuing nuisance, for the maintenance of which an action may be brought at any time, and damages recovered up to the time of bringing the suit. *Prentiss v. Wood,* 132 Mass., 486; *Wells v. New Haven and N. Co.,* 151 Mass., 46, and cases there cited.

"That it is of a permanent character, or that it has been continued for any length of time less than that what is necessary to acquire a prescriptive right, does not make it lawful, nor deprive the adjacent landowner of his right to recover damages.

"Nor can the adjacent landowner in such a case, who sues for damages to his property, compel the defendant to pay damages for the future. The defendant may prefer to change his use of his property so far as to make his conduct lawful.

"In the present case we cannot say that the defendant may not repair or reconstruct its dam and reservoir in such a way as to prevent percolation, with much less expenditure than would be required to pay damages for a permanent injury to the plaintiff's land."

We think this Court has held in the case of *Tailor v. R. R.,* 145 N. C., 407, that permanent damages cannot be recovered where the acts complained of amount to nothing more than a nuisance to individuals. In that case the Court says:

"In our view of the law, the plaintiffs cannot in any event recover permanent damage for the depreciation of their property by reason of the establishment of the railway terminal on Gilliam Street, opposite it.

"If they can allege and prove unlawful and unwarranted acts and conduct by the defendant in the management of its terminal, which amount to a nuisance, they may enjoin the further commission of such acts, as well as recover such temporary damages as their property has sustained thereby."

For these reasons, I am of opinion the plaintiff is not entitled to recover the permanent damages sued for in this action.

CLARK, C. J., concurs in this dissent.