ELISHA WELLS *vs.* NEW HAVEN AND NORTHAMPTON COMPANY.

Franklin.    September 18, 1889. — February 25, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Action — Railroad Structure — Continuing Nuisance — Statute of Limitations.*

A railroad company, in constructing its road-bed in 1880, built a culvert under it, and, having unnecessarily brought together eight natural streams of water, discharged them through the culvert upon adjoining land at a place different from the original course of any of them, three of the streams never before having flowed over such land at all; and thereafter these combined waters, and also an increased flow of surface water caused by the road-bed, varying with the seasons, continued to flow through the culvert. The landowner brought no action against the company for any damage to the land, and in May, 1887, he sold it. In July and August of that year, as the result of heavy rains, the land was overflowed, sand was deposited thereon, and the crop of hay was injured. *Held*, that the railroad structure formed a continuing nuisance, that the purchaser could maintain an action against the company for the damage occurring after his purchase, and that the statute of limitations was no bar.

TORT to recover damages caused by the discharge of water upon the plaintiff's land.  Writ dated October 24, 1887.  At the trial in the Superior Court, before *Barker*, J., there was evidence tending to prove the following facts.

The defendant in 1880, in 'constructing its railroad alongside the land in question, which consisted of meadow land used for growing grass and was then owned by one Bigelow, built a permanent embankment about sixteen feet high, fifty feet wide at the base, and fifteen feet wide at the top, to support its track, and built a culvert crosswise through it at the bottom for drainage. The defendant then changed the courses of five brooks, which were natural streams of water, so as to discharge the water through the culvert, which was built at a place different from the places where the brooks discharged upon the land before the construction of the railroad.  At the same time, it also changed the courses of three other brooks, likewise natural streams of water, which had never before discharged upon this land, so as to discharge them through the culvert.  A largely increased volume of water was thereby discharged upon the land.  The flow of surface water was by the culvert and by the embankment also changed at the same time, and an increased volume thereof was discharged upon the land.  The waters of these brooks and the surface water thereafter continued to flow through the culvert, varying in quantity with the seasons, in substantially the same manner, down to the date of the writ and the time of the trial. Bigelow never sued the defendant for damages to the land, but by a deed dated May 23, 1887, conveyed it to the plaintiff, and assigned to him all his rights, claims, demands, and causes of action against the defendant arising from the acts in question.

During heavy rains in July and August, 1887, water charged with sand and other material rushed through the culvert upon the land, and saturated portions of it, thereby injuring the quality of the annual hay crop, but did not cause the destruction of the plaintiff's land or render any part of it worthless.

The defendant, upon the foregoing facts, asked the judge to rule : " 1. Upon all the evidence in the case this action cannot be maintained.   2. This action is barred by the statute of limitations.   3. The injuries to the plaintiff's land having been caused

by a permanent structure, namely, a railroad embankment and a culvert under it, built by the defendant prior to the plaintiff's ownership of said land, he cannot recover in this action."

The judge declined so to rule, but ruled that, if the defendant in the construction of its railroad diverted the courses of natural streams and so caused them to flow upon the plaintiff's land to its damage, the defendant would be liable to him in this action for such damages sustained during the time of his ownership, unless the diversion had been necessarily made in the proper construction of its railroad at the time of such construction; and submitted the case to the jury, with instructions not excepted to except as inconsistent with the above requests.

The jury found for the plaintiff; and the defendant alleged exceptions.

*J. A. Aiken,* for the defendant.

*C. C. Conant,* for the plaintiff.

C. ALLEN, J.   The defendant in the construction of its railroad in 1880 brought together eight natural streams of water, and discharged them through one culvert, which was built under its road-bed, upon the land now owned by the plaintiff, at a different place from that where either of them originally flowed; and indeed three of the streams had never before flowed over this land at all.   Under the instructions which were given to the jury, they must have found that this mode of discharging these streams of water upon the plaintiff's land was not necessarily adopted in the proper construction of the railroad.   Since the building of the culvert, the waters of the brooks and also an increased volume of surface water have flowed through it, varying in quantity with the seasons, and possibly causing some damage to the land in question prior to the time of its purchase by the plaintiff, though this fact is not distinctly found, and at any rate, so far as appears, no action for such prior damage was ever brought.   The plaintiff purchased the land in May, 1887, and in July and August of the same year there were heavy rains, and the plaintiff's land was overflowed, and sand deposited thereon, and the crop of hay injured, but no part of the land was rendered worthless, and it was only for the damage which thus occurred after his purchase that the plaintiff sought at the trial to recover.

The defendant does not contend, as indeed it could not successfully, — *Curtis* v. *Eastern Railroad*, 14 Allen, 55, and 98 Mass. 428, — that the injury suffered by the plaintiff is not in its nature a proper subject of recovery in an action at law ; but the defence now rests upon the grounds that the action should have been brought once for all within six years after the defendant's wrongful act of building its railroad in an improper mode ; that the right of action was in the original owner, the plaintiff's grantor, who was entitled to recover not only the existing but all prospective damages to the land ; that no action will lie in the name of the present plaintiff ; and that the right of action is barred by the statute of limitations.

No doubt the former owner of the land might have sued at once for the invasion of his right by the discharge of the several natural streams of water upon his land in the manner stated, even though the damage was merely nominal. Otherwise, a right by prescription might be gained. *Jackman* v. *Arlington Mills*, 137 Mass. 277, 283. *Hooten* v. *Barnard*, 137 Mass. 36. But no such action was brought ; and the question is, whether such an action must be brought within six years from the defendant's original wrongful act, or whether the injury is to be treated as a continuing one, for which the defendant may be held responsible after the expiration of six years.

If the defendant's act was wrongful at the outset, as the jury have found, we see no way in which the continuance of its structure in its wrongful form could become rightful, as against the plaintiff, unless by release or grant, by prescription, or by the payment of damages. If originally wrongful, it has not become rightful merely by being built in an enduring manner. That which was a nuisance at first does not lose its character as such by being continued for six years, whatever effect the lapse of time might have upon equitable remedies for its removal ; and the maintenance of a structure which will continue to cause a wrongful diversion of water upon the plaintiff's land, in quantities varying with the seasons, is a continuing nuisance, and an invasion of the plaintiff's right from day to day, and he may select his own time for bringing an action therefor, and he is not barred by the lapse of six years from the erection of the structure. The case falls within the ordinary rule applicable to con-

tinuing nuisances and continuing trespasses. *Prentiss* v. *Wood,* 132 Mass. 486. *New Salem* v. *Eagle Mills,* 138 Mass. 8. *Uline* v. *New York Central & Hudson River Railroad,* 101 N. Y. 98, 109, *et seq. Reed* v. *State,* 108 N. Y. 407, 414. *Delaware & Raritan Canal* v. *Wright,* 1 Zabr. 469. *Bare* v. *Hoffman,* 79 Penn. St. 71. *Holmes* v. *Wilson,* 10 Ad. & El. 503. *Battishill* v. *Reed,* 18 C. B. 696. *Whitehouse* v. *Fellowes,* 10 C. B. (N. S.) 765. *Devery* v. *Grand Canal,* Ir. R. 9 C. L. 194.

In *Fowle* v. *New Haven & Northampton Co.* 107 Mass. 352, and 112 Mass. 334, a case in some respects resembling this, the plaintiff had brought a former action in which he expressly declared for prospective damages, and he was allowed by the court to recover them, apparently without any objection on this ground from the defendant; and if he had been allowed to hold his second verdict, he would have got double damages, which clearly was not permissible. The decision of that case does not necessarily imply that an action must have been brought within six years, or if it does, we cannot follow it; and we have no occasion to consider whether ordinarily prospective damages would be recoverable in such a case or not. No question of the measure of damages is before us.               *Exceptions overruled.*