SIXTY-EIGHT DEVONSHIRE, INC. *vs.* MORRIS SHAPIRO, trustee.

Suffolk.   November 5, 1964. — December 4, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Practice, Civil,* Exceptions: allowance and establishment; Opening to jury; Ordering verdict. *Affidavit. Snow and Ice. Negligence,* One owning or controlling real estate. *Notice. Limitations, Statute of.*

Where, pursuant to Rule 74 of the Superior Court (1954), a bill of exceptions in an action was seasonably presented to the trial judge and a signed certificate of its presentation was seasonably filed but through inadvertence contained neither a jurat nor a statement that it was made under the penalties of perjury, it was within the power of the judge to allow an amendment of the certificate to cure such deficiency nunc pro tunc after the expiration of the thirty day period specified in Rule 74. [180–181]

The requirement of notice in G. L. c. 84, § 21, was inapplicable to a claim for damage to the claimant's building caused, at least in part, by ice forming on that building from water pouring onto it from a broken downspout on an adjacent building.   [182–183]

An action of tort for damage to the plaintiff's building from water discharged upon it from a broken downspout on an adjacent building of the defendant was not barred by the two year statute of limitations, G. L. c. 260, § 2A, where, although the discharge of water was first observed more than two years before the commencement of the action, the discharge with resulting damage was a recurring event continuing to about the time of its commencement.   [183–184]

Ordering a verdict for the defendant on the plaintiff's opening to the jury in an action for damage to the plaintiff's building through water discharged thereon from a broken downspout on the defendant's building was not supported on the ground of vagueness of the opening on the issue of damages where the plaintiff's counsel referred to "staining the brickwork" of the plaintiff's building, formation of ice thereon, and seepage of water into it through "washed out joints," and stated that evidence would be offered as to the extent and cost of the damage. [184]

TORT.   Writ in the Superior Court dated November 20, 1956.

The action was tried before *Gourdin,* J.

*William J. McCluskey* for the plaintiff.

*Warren G. Miller* (*Edward Miller* with him) for the defendant.

SPALDING, J.   This action of tort comes here on two bills of exceptions.   The plaintiff's bill arises out of the direction of a verdict for the defendant on the plaintiff's opening.   The defendant's bill arises out of the denial of his motion to dismiss the plaintiff's bill.

## DEFENDANT'S EXCEPTIONS.

The plaintiff excepted to the action of the judge in directing a verdict for the defendant, and thereafter seasonably filed a bill of exceptions.   At the expiration of three months from the time of filing, the plaintiff received a communication (dated January 3, 1964) from the clerk's office entitled "Notice Under Rule 74."   The notice informed the plaintiff that the bill of exceptions, which had been filed three months earlier, had not been allowed or disallowed, and that, "[u]nless within thirty days hereafter, or within

such further time as may be allowed, an affidavit is filed with the clerk that the bill of exceptions has been presented by a party to the proper justice for allowance, the bill of exceptions will be dismissed." On the bill of exceptions, above the signature of the trial judge, the following notation appears: "Presented for allowance Jan. 24, 1964." Thereafter, on January 27, 1964, counsel for the plaintiff filed with the clerk a document entitled "Affidavit Under Rule 74" which reads as follows: "I, William J. McCluskey, hereby certify that on Friday, January 24, 1964, the Bill of Exceptions filed with the Court by the plaintiff on October 2, 1963, was presented to Gourdin, J. [who presided at the trial] for allowance." Below this statement counsel for the plaintiff affixed his signature, but there was no jurat nor was there any recital that the statement was made under the penalties of perjury.[1]

On February 6, 1964, the defendant filed a motion to dismiss the plaintiff's bill of exceptions. The grounds of the motion were (1) that the plaintiff had failed to present the bill to the judge who presided at the trial in accordance with the provisions of Rule 74, and (2) that it had failed to file the affidavit required by Rule 74 showing that it had been complied with.

At the hearing on the motion, on March 3, the plaintiff presented a "Motion to Amend Affidavit Under Rule 74." In this motion the plaintiff stated that in its affidavit of presentation it had failed, through inadvertence, to state that it was made under the penalties of perjury, and asked leave to amend the affidavit nunc pro tunc by adding above counsel's signature the following: "Subscribed this 24th day of January 1964, under the pains and penalties of perjury." The motion was supported by an affidavit executed by the plaintiff's counsel stating, among other things, that he had in fact presented the bill of exceptions to the judge

---

[1] Rule 112 of the Superior Court (1954) reads: "No written statement in any proceeding in this court required to be verified by affidavit shall be required to be verified by oath or affirmation if it contains or is verified by a written declaration that it is made under the penalties of perjury."

for allowance on January 24, 1964. The judge, subject to
the defendant's exceptions, permitted the filing of the affi-
davit in support of the motion to amend, allowed the motion
to amend, and denied the defendant's motion to dismiss the
plaintiff's bill of exceptions.

There was no error.

There can be no doubt that the bill was presented for al-
lowance within the time prescribed by Rule 74 of the Supe-
rior Court.[2] A notation to that effect signed by the judge
appears on the bill. No contention is made that this nota-
tion was not in accordance with the facts. The defendant
argues that the purported affidavit of presentation was
fatally defective because it contained neither a jurat nor a
statement that it was made under the penalties of perjury,
and that the court, after the expiration of the thirty day
period provided by Rule 74, had no power to allow the
amendment to cure the defect. The affidavit of presenta-
tion was, of course, defective, for it contained neither a
jurat nor a statement that it was made under the penalties
of perjury. The judge, however, had personal knowledge
that the bill had in fact been presented seasonably. Thus,
but for the omission of the appropriate language in the af-
fidavit, there would have been full compliance with Rule 74.
We are of opinion that it was within the court's power to
allow the plaintiff to cure the defect nunc pro tunc by the
amendment. See *Perkins* v. *Perkins,* 225 Mass. 392, 396–
397. There has been substantial compliance with Rule 74.
The filing of the affidavit required by the rule serves two
functions. First, it is designed to insure that there has
been a presentation of the bill. If the affidavit has falsely

---

[2] The portions of Rule 74 here pertinent read: "If within three months
after filing, a bill of exceptions has not been allowed or disallowed by the
justice to whose opinion, ruling, direction or judgment the exceptions were
taken, the clerk shall forthwith notify the parties interested and such justice
that unless within thirty days thereafter, or within such further time as may
be allowed, an affidavit is filed with the clerk that the bill of exceptions has
been presented by a party to the proper justice for allowance, the bill of ex-
ceptions will be dismissed and judgment or decree will be entered as though
no exceptions had been filed. If, within such time, the bill of exceptions is
neither allowed nor disallowed, and no such affidavit is filed, the exceptions
shall be dismissed by the clerk without further notice or order."

stated that the bill had been presented, it would be open to a party to show that, because there had been no presentation, the rule was not satisfied. *Attwood* v. *New England Trust Co.* 305 Mass. 472, 474–475. Second, the filed affidavit would be constructive notice (see *Hodgerney* v. *Baker,* 324 Mass. 703, 705–706) to the opposing party that the bill would not be automatically dismissed. The absence of a jurat or a statement that the affidavit was made under penalties of perjury, unlike the complete failure to file an affidavit, is not a basis upon which a party would reasonably conclude that there had not been a presentation and that an automatic dismissal would occur. See *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 211–212.

*Exceptions overruled.*

PLAINTIFF'S EXCEPTIONS.

We summarize the plaintiff's opening as follows: In 1954 and for some time prior, the plaintiff owned a building on Devonshire Street, Boston, which was adjacent to one owned by the defendant. The defendant became the owner of his building in 1954. Along the top of the defendant's building there is a gutter and at one end of it there is a downspout. In August of 1954 and "sometime later on, in the winter months of the year," one of the officers of the plaintiff, one Moskow, observed that water was pouring down over the gutter and that the downspout, instead of carrying the water down, poured it onto the front of the plaintiff's building. During the year there was alternate freezing and thawing which caused icicles to form on the front of the plaintiff's building. Upon observing this, Moskow got in touch with the defendant and said, "Look what's happening up at your building. . . . You will have to correct that because it is doing damage to my building, staining the brickwork and so on." After the lapse of a month or six weeks, during which the defendant did nothing to correct the condition, Moskow spoke to the defendant again, saying, "Look, what are you going to do about this? . . . You can see it's a dangerous condition; it's staining the

brickwork [and] icicles are forming on my building. You better get it fixed.'' This condition continued ''all through the winter months of . . . [1954], and into 1955 and nothing was done about it.'' During the spring, summer, and fall months, whenever it rained, ''water would overflow and come cascading down.'' Persons walking on the sidewalk had to walk around the water to avoid it. Again Moskow complained to the defendant, telling him that he was maintaining a nuisance, and that ''someone . . . [was] going to get hurt in the winter with icicles and all that.''

This condition continued uncorrected from the fall of 1954 until the winter months of 1956 at which time Moskow again complained to the defendant. In October, 1956, a contractor hired by the plaintiff examined the defendant's building; he saw a broken downspout and observed ''water flowing out of the gutter and running down the face of the [plaintiff's] building.'' When informed that this condition had existed for some two years or more and that mortar had been washed out of the joints of the building, the contractor told Moskow that ''this condition causes damage to the interior structure of the building; . . . the water seeps in through the washed out joints into the building, and it comes in contact with the steel work.''

Counsel for the plaintiff concluded his opening by stating that the contractor would testify as to what would have to be done to determine the extent of the damage and the cost thereof, and that another expert would testify concerning his experience ''in a similar situation where water got into the building and the damage that was caused.'' Asked by the court if he wished to add anything to his opening, counsel for the plaintiff stated that the conditions which he had described were the same on the rear of the defendant's building, ''namely, broken conductors, broken gutter and water was cascading down on the plaintiff's building.'' Thereupon, the defendant presented a motion for a directed verdict which was allowed subject to the plaintiff's exception.

1. The defendant has argued that the plaintiff's opening established that the alleged damage was caused at least in

part by snow or ice and that since the notice requirement provided for in G. L. c. 84, § 21, was not met, the defendant's motion for a directed verdict was properly allowed. The plaintiff's position is that § 21 is not applicable to cases of property damage but applies only to actions for personal injuries. See, however, *Erickson* v. *Buckley,* 230 Mass. 467, 470–472. Since the result will be the same, we assume, as the defendant contends, that the statute would be applicable to actions for property damage.

General Laws c. 84, § 21, reads in relevant part: "The three preceding sections, so far as they relate to notices of injuries resulting from snow or ice, shall apply to actions against persons founded upon the defective condition of their premises, or of adjoining ways, when caused by or consisting in part of snow or ice; provided, that notice within thirty days after the injury shall be sufficient."[3] Thus, if a defective condition on the defendant's premises was "caused by or . . . [consisted] in part of snow or ice" the statutory notice must be given. *DePrizio* v. *F. W. Woolworth Co.* 291 Mass. 143, 145–146.

In the case at bar, the defective condition on the defendant's premises was a "broken downspout" which caused water to flow onto the plaintiff's building. There is nothing to show that snow and ice on the defendant's premises caused the damage to the plaintiff's property. The formation of ice on the plaintiff's building would not make § 21 applicable. The plaintiff, therefore, did not have to give the statutory notice.

2. The defendant also contends that the two year statute of limitations for tort actions, as provided in G. L. c. 260, § 2A, bars the plaintiff's cause of action. This contention cannot prevail. The plaintiff's opening indicates that an officer of the plaintiff corporation observed the allegedly defective gutter in August of 1954. The writ in the present action was dated November 20, 1956. But the opening also

---

[3] This statute was amended by St. 1955, c. 505, but the amendment is not material to the case at bar.

184                                          348 Mass. 184

Commissioner of the Metropolitan Dist. Commn. *v.* Director of Civil Service.

shows that damage to the plaintiff's building caused by the discharge of water from the defective gutter was a recurring event which continued down to the time the action was brought. Thus there was an invasion of the plaintiff's rights from day to day and the case falls within the rule applicable to continuing nuisances and continuing trespasses. *Prentiss* v. *Wood,* 132 Mass. 486, 489; *Wells* v. *New Haven & Northampton Co.* 151 Mass. 46, 49.

3. Finally, the defendant urges that the opening was too vague and uncertain on the issue of damages to warrant the submission of the case to the jury. But in an opening it is not to be expected that a plaintiff will outline his damages with particularity. See *Carbone* v. *Trustees of N. Y., N. H. & H. R.R.* 320 Mass. 710, 713–714. *Douglas* v. *Whittaker,* 324 Mass. 398, 399–400. That is a matter ordinarily left to proof.

*Exceptions sustained.*