Toomey, J.
Introduction
This case involves a release of gasoline from the defendants’ gas station in the late 1970’s. Plaintiffs allege that the release, which defendants do not contest, has resulted in damage to their property and personal injury to themselves. The plaintiffs have lived across the street from the defendants’ gasoline station since 1971.
In 1986, the Department of Environmental Quality and Engineering (DEQE)[3] was notified of and investigated gasoline odor under the roadway in front of the plaintiffs’ house. The plaintiffs were notified in 1988 that the release had migrated and may have contaminated their property. The plaintiffs sued for damages, and summary judgment was granted based upon the expiration of the statute of limitations. In October 1998, the Appeals Court found a triable issue of fact on the issue of when the plaintiffs became aware of the contamination, an issue determinative of the statute of limitations question.
The plaintiffs amended their complaint in January 1999 and added a count under G.L.c. 21E.[4] The matter is now before the court on the defendants’ motion for summary judgment. For the reasons set forth below, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
Defendant Arena Auto Parts, Inc. (Arena Auto) operated a gasoline filling station at 85 Mansfield Avenue, Norton, Massachusetts from 1972 until 1981. Defendant Rosalie Arena was the treasurer and clerk of Arena Auto. On July 30, 1986, an employee from Bay State Gas Company encountered gasoline odors during installation of a natural gas pipeline under the roadway in front of the plaintiffs’ house. DEP was notified and investigated the potential sources. When a DEP official asked Samuel J. Arena, Sr., now deceased, whether Arena Auto had ever had any gasoline spills or leaks, Arena reported that Arena Auto had experienced a leak in the past. In reliance on that report, the defendants maintain that “[t]he problem of gasoline under State Highway 140 was first discovered and reported to the Department of Environmental Protection on July 30, 1986.” Exhibit I affixed to Statement of Undisputed Facts (Letter to Plaintiff Bridget McBarron from Thomas Powers, Acting Commissioner, DEP dated June 9, 1994).
On August 28, 1986, the DEP sent Arena Auto a Notice of Responsibility (the NOR) under G.L.c. 21E proclaiming that Arena Auto could be liable for up to three times the cost of investigating and cleaning up a gasoline leak. The defendants maintain that they acted, at all times, in full compliance with the laws responding to a release. The DEP appears to confirm this. Exhibit I affixed to Statement of Undisputed Facts (Letter to Plaintiff Bridget McBarron from Thomas Powers, Acting Commissioner, DEP dated June 9, 1994).
In a report dated May 27, 1987, CHI, an environmental engineering corporation, tested the plaintiffs’ property. The test confirmed that the release, originating from 85 Mansfield Avenue, had traveled downstream, resulting in elevated concentrations of volatile organic compounds typical of petroleum product release[5] on their property. The conclusion of a soil survey, dated June 2, 1989, was that gasoline vapors were present near the road in front of the plaintiffs’ property, but there was no detectable risk of vapor exposure at points taken in close proximity to the home.
The plaintiffs filed a complaint against the defendants on September 22, 1994 for property damage caused by the gasoline contamination. A Superior Court judge granted the defendants summary judgment on the ground that the tort action was barred by the three-year statute of limitations; the judge found that there was no genuine issue of material fact that the plaintiffs knew or should have known that they had been harmed by the release of gasoline from the Arenas’ property not later than September 22, 1991.
The Appeals Court reversed, ruling that “(t]he evidence is equivocal as to when the migrating contamination plume actually harmed the plaintiffs.” Exhibit C affixed to Statement of Undisputed Facts. In the view *577 of the Appeals Court, therefore, summary judgment was not appropriate because there remained a question of fact regarding when the plaintiffs knew or should have known that they were harmed. The matter was then remanded to this court where defendants again press a motion for summary judgment on issues not resolved by the Appeals Court’s decision.
The defendants now argue that the plaintiffs have failed to produce any evidence that the defendants acted intentionally, recklessly, or negligently. They further contend that the plaintiffs refused to grant access to their property and refused to remediate the contamination which has impeded the cleanup activities. Lastly, the defendants maintain that the plaintiffs failed to bring this action against the Estate of Samuel J. Arena, Sr. in a timely fashion and have produced no evidence that Rosalie Arena should be held individually liable either in tort or under Chapter 21E.
DISCUSSION
The standard for the granting of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.R 56(c), 365 Mass. 824 (1974). Cargill Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 358 (1997). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Id. at 716. When the nonmoving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
Here, the plaintiffs, the nonmoving parties, bear the burden of proof on Counts I-XIV of the Amended Complaint, but have failed to produce admissible evidence sufficient to defeat the summary judgment motion on certain of those Counts. Accordingly, the defendants’ motion for summary judgment will be allowed in part and denied in part.
The plaintiffs have brought suit claiming, in the Amended Complaint, the following causes of action: Counts I and II continuing trespass — real property; Counts hi and IV, continuing trespass — personal injury; Counts V and VI, negligence — property damage; Counts VII and VIII, negligence — personal injury; Counts IX and X, nuisance; Counts XI and XII, nuisance — personal injury; and Counts XIII and XIV, outrageous conduct. Additionally, Counts XV and XVI of the Amended Complaint claim a violation of G.L.c. 21E.[6]
The defendants argue that they are entitled to summary judgment as a matter of law because the plaintiffs have failed to produce any evidence that the defendants acted intentionally, recklessly, or negligently. As will appear in more detail, infra, however, defendants’ argument runs afoul of the general principle that questions of credibility, negligence and intent should be left to a jury. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (reasoning that in cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate). There is no reason at bar to deviate from that proposition. Moreover, defendants’ assertions regarding the plaintiffs’ alleged refusal to grant access and to remediate the contamination which has impeded the cleanup activities present genuine issues of material fact and preclude summary judgment. On the other hand, defendants correctly contend that there is insufficient evidence on the record to support the plaintiffs’ claim of outrageous conduct by the defendants. We turn now to an assessment of each of plaintiffs’ claims in the Mass.R.Civ.P. 56 context.
Counts I through IV (Continuing Trespass)
Because the Appeal Court found that there is a triable issue of fact on the issue of when the plaintiffs became aware of the contamination, these counts survive defendants’ statute of limitation attack on motion for summary judgment. See Carpenter v. Texaco, Inc., 419 Mass. 581, 583-84 (1995).[7] In circumstances strikingly similar to the present case, the court in Carpenter held that “(w]e decline to recognize for the first time a continuing trespass or continuing nuisance concept ... in part because, in adopting a three-year statute of limitations in 1992 for private actions under G.L.c. 21E, the Legislature stated a guiding policy.” Id. at 584. In other words, the Carpenter Court refused to employ the label of continuing trespass or continuing nuisance as a means to circumvent the statute of limitations, where the Legislature did not recognize a similar concept of a continuing wrong under G.L.c. 2IE. Id. However, the court added that “a continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct.” Id. at 583. Thus, the date when the plaintiffs became aware of the contamination, which the Appeal Court found to be a triable issue of fact, will be dispositive on these counts. Ascertainment of that date will require trial.
Counts V through VIII (Negligence)
As noted supra, “(u)sually ‘the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defen *578 dant was negligent may the issue be taken from the jury.’ ” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983), quoting Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973). That bias against pre-trial judgments in negligence cases, coupled with the general rule that every person has a duty to exercise reasonable care for the safety of others, Lyon v. Morphew, 424 Mass. 828, 832 (1997), and with the reality that a finding for plaintiffs would not be irrational, is sufficient to overcome the defendants’ motion for summary judgment on the negligence counts.
Counts IX through XII (Nuisance)
“Anyone who has been impaired by a private nuisance is entitled to recover for damages resulting to him.” United Electric Light Co. v. DeLiso Constr. Co., 315 Mass. 313, 321 (1943). Liability for a nuisance, should “be based upon a determination that the interference is intentional and unreasonable or results from conduct which is negligent, reckless or ultra hazardous.” Ted’s Master Service, Inc. v. Farina Bros. Co., Inc., 343 Mass. 307, 311 (1961). The conduct complained of here — a gasoline spill — may be considered ultra hazardous and subject to strict liability. Nevertheless, nuisance claims are fact-based. Accordingly, summary judgment will not lie for the nuisance counts.
Counts XIII and XIV (Outrageous Conduct)
Although not drafted with exceptional clarity, the plaintiffs’ claim appears to assert that the defendants’ actions constitute the tort of intentional infliction of emotional distress. To prevail on such a claim, however, the plaintiffs must prove:
(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, ... (2) that the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of plaintiffs distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.
Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997), citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). At bar, the Rule 56 submissions do not describe conduct of defendants that might rationally be found by a trier of fact to be “extreme and outrageous.”
The Supreme Judicial Court has said that “[i]n considering whether a plaintiff has made out a claim for intentional infliction of emotional distress, the trier of fact ‘would be entitled to put as harsh a face of the defendant’s actions as the basic facts would reasonably allow. ’ ” Foley v. Polaroid Corp., 400 Mass. 82, 100 (1987), citing Richey v. American Auto. Ass'n., 380 Mass. 835, 839 (1980). In the present case, no reasonable trier, having received the evidence proffered at bar, could conclude that the actions of the defendants, even viewed in the light most favorable to plaintiffs, ascend to the “extreme and outrageous” level required for recovery for a claim of intentional infliction of emotional distress. See Foley, 400 Mass. at 100. Thus, the defendants’ alleged conduct cannot, as a matter of fact or law, be rationally deemed “extreme and outrageous , ” and defendants will be granted summary judgment upon these counts.
Liability of Estate and Rosalie Arena, Individually
Finally, the defendants allege that the plaintiffs failed to bring this action against the Estate of Samuel J. Arena, Sr. in a timely fashion and have produced no evidence that Rosalie Arena, who was treasurer and clerk of Arena Auto, should be held individually liable either in tort or under Chapter 21E.
Massachusetts law has prescribed a relatively brief period of limitations for an aggrieved party to seek remedy against the estate of a tortfeasor. Mullins v. Garthwait, 875 F. Supp. 14, 17 (D. Mass. 1994) (“Massachusetts General Law chapter 197, §9 (the ‘short statute of limitations’) . . . established that all creditors of a decedent’s estate, regardless of the statute of limitations of the underlying action, file claims within one year of the decedent’s death”). The statutes that pertain to plaintiffs’ claims are plainly remedial in character. For example:
Notwithstanding the provisions of Section nine, an action for personal injuries, or death, if commenced more than one year after the date of death of the deceased, may be brought against said executor or administrator, provided that such action is commenced within three years next after the cause of action accrues, and provided further that any judgment recovered . . . may be satisfied only from the proceeds of a policy of insurance or bond, and not from the general assets of the estate.
G.L.c. 197, §9A.
If the supreme judicial court, upon a bill of equity filed by a creditor whose claim has not been prosecuted within the time limit by Section nine, deems that justice and equity require it and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person, provided forthwith upon the filing of the bill a notice such as provided in Section nine has been filed in the proper registry of probate; but such judgment shall not affect any payment or distribution made before the filing of such bill and notice.
G.L.c. 197, §10. See Mullins v. Garthwait, 875 F.Supp. at 17-18; Tamulevich v. Robie, 426 Mass. 712, 714 (1998). Whether either or both of the quoted Sections of G.L.c. 197 apply to the controversy at bar is in *579 dispute, and resolution of that dispute will require factual determinations with respect to the timing of the accrual of the cause of action. Accordingly, summary judgment is not apropos.
Furthermore, whether or not Rosálie Arena, a corporate officer of Arena Auto, had any personal involvement in some decision or action, which is causally related to the plaintiffs’ alleged injuries, is a question of fact. See Cash Energy, Inc. v. Weiner, 768 F. Supp. 892, 895, 900 (D. Mass. 1991). “Traditional principles of corporate law preclude individual liability unless grounds are shown either for piercing the corporate veil or finding active personal involvement in a tortious act.” Id. at 895. Rosalie Arena’s personal involvement cannot be ascertained on the summary judgment record.
In sum, the defendants’ allegations that the plaintiffs failed to bring this action against the Estate of Samuel J. Arena, Sr. in a timely fashion and that plaintiffs have produced no evidence that Rosalie Arena, who was treasurer and clerk of Arena Auto, should be held individually liable either in tort or under Chapter 2IE raise genuine issues of material fact and, accordingly, must be left for trial.
ORDER
It is therefore ORDERED that those portions of defendants’ motion for summary judgment which assert that Rosalie Arena should be held individually liable in tort or under Chapter 21E, that the plaintiffs failed to bring this action against the Estate of Samuel J. Arena, Sr. in a timely fashion, and that relief should be afforded them upon Counts I through XII of the plaintiffs’ Amended Complaint are DENIED. Those portions of defendants’ motion for summary judgment which seek relief from Counts XIII and XIV of the Amended Complaint are ALLOWED.

 Now the Department of Environmental Protection (DEP).

 Responsible parties are subject to strict liability under G.L.c. 21E for a hazardous waste release.

 Benzene, Toluene, Ethylbenzene, and Total Xylenes (BTEX).

 The parties agree that the 21E claim survives any motion for summary judgment. Thus, only Counts I through XIV will be addressed in this determination of the defendants’ present motion for summary judgment.

 In Carpenter, the Superior Court judge was held to have correctly allowed defendants’ motion for summary judgment on trespass and nuisance claims arising from the contamination of real property by gasoline that had leaked from an underground tank, where the actions were not commenced within three years of the date when the plaintiffs became aware of the pollution; where the release of the resulting seepage onto the plaintiffs’ property ended more than six years before the actions were brought there was no continuing trespass or nuisance to support the claims.