Botsford, J.
The plaintiffs, Michelle Derrah, as executrix of her father’s estate, Linda Brown and Janet Marie Maglia, are sisters. They allege in their complaint that the defendant John B. Shorton, Esquire, committed legal malpractice in handling the probate of the estate of the plaintiffs’ father, Frederick A. Publicover. Continental Casualty Company (CCC) intervened in the action as a plaintiff, filing its own complaint and cross-claim for declaratory relief. CCC, which issued a policy of lawyers’ professional liability insurance to Shorton, seeks a declaration that no coverage is available to the defendant with respect to the claims asserted by the plaintiffs, and that it is not obliged to defend or indemnify Shorton in relation to the wrongful acts alleged in this case. For the following reasons, CCC’s motion will be allowed.
*259 BACKGROUND
The summary judgment record indicates the following. The plaintiffs are the daughters of Frederick A. Publicover, who died on May 2, 1990. The plaintiffs retained Shorton on May 15, 1990, to provide'necessary legal services associated with probating the estate, including the filing of estate and income tax returns. Each of the plaintiffs is a beneficiary under their father’s will, and the plaintiff Michelle Derrah is also the executrix of their father’s estate. In their complaint the plaintiffs allege that Shorton failed to provide competent or adequate legal services, resulting in losses to them. The complaint includes counts for breach of contract, intentional infliction of emotional distress, fraudulent misrepresentation, conversion, and violation of G.L.c. 93A.
The plaintiffs’ complaint first alleges that Shorton failed to tile timely three required tax returns on behalf of the estate: (a) a Massachusetts estate tax return which, the plaintiffs claim, should have been filed within nine months of Publicover’s death — no later than February 2, 1991 — but which was not filed until April 11, 1995, resulting in the assessment of interest and penalties; (b) a Federal income tax return, alleged to be due by April 15, 1993, resulting in the loss of an opportunity for a refund; and (c) a Massachusetts income tax return claimed to be due by April 15, 1991, resulting in the assessment of penalties and interest.
The complaint’s second claim is that Shorton failed to evict the tenants who occupied, without paying rent to the estate, real property which had been owned by the plaintiffs’ father. This failure led to the involuntary foreclosure of the mortgage on the property and the property’s forced sale at auction on May 21, 1991.
Third, the complaint alleges that Shorton prosecuted a civil action on behalf of the estate and obtained a favorable judgment on November 23, 1993, but took no affirmative steps to collect the judgment which remains unsatisfied.
Finally, the complaint alleges that the plaintiffs notified Shorton immediately after their father’s death of the presence of a valuable coin collection (worth, they claim, approximately $300,000), and directed him to take the appropriate steps to secure it. The defendant allegedly failed to do so and the coin collection has never been recovered.
CCC issued a lawyers’ professional liability policy, policy no. LPC 13 345 42 21 (the policy) to the Law Offices of John B. Shorton on March 1, 1996. The policy was renewed for a second year on March 1, 1997. The policy is a “claims-made” policy which provides coverage for certain claims first made against the insured and reported to CCC during the policy period. Under § 1(A) of the policy, CCC is obligated to “pay all amounts, up to [its] limit of liability, which [Shorton] become[s] legally obligated to pay as a result of a wrongful act by [Shorton] ...” A “wrongful act” is defined in the policy as “any negligent act, error or omission in . . . the rendering of or failure to render, professional services ...” Section 1(B) of the policy originally provided in pertinent part that “[t]he wrongful act . . . must happen before the end of the policy term . . . and claim therefor must first be made against [Shorton] and reported to [CCC] during that policy term.” This language, included in both the 1996 and 1997 versions of the policy, was amended by a “prior acts date” provision. The “prior acts date” provision states in pertinent part that ”[t]he wrongful act . . . must happen on or after the prior acts date [of March 1, 1996]. . ,”[2] This amendment thus precludes coverage for any “wrongful act” which occurred before March 1, 1996.
CCC canceled the policy on June 11, 1997, due to Shorton’s failure to pay the premiums. June 11,1997, is also the date the plaintiffs filed their complaint in this case. Shorton has been paid $13,000 for legal services to the estate of Frederick Publicover. The plaintiffs allege that this fee is far in excess of the value of services rendered.
CCC’s motion for summary judgment is opposed by the plaintiffs. Shorton has not submitted an opposition.
DISCUSSION
“As a general rule, a dispute concerning the proper interpretation of an insurance policy raises only a question of law. In interpreting the provisions of a policy, we construe and enforce unambiguous terms according to their plain meaning. When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms.” Somerset Savings Bank v. Chicago Title Insurance Co., 420 Mass. 422, 427 (1995) (citations omitted).
The language of the policy at issue is clear; whatever difficulty there may be with interpreting its meaning relates to its application to the facts. According to the plain language of the “prior acts date” amendment, the policy was not to provide coverage for any wrongful act which occurred before March 1, 1996. The issue for resolution, therefore, is the determination of when the various “wrongful act[s]” took place. This issue is clouded here by the fact that none of the alleged wrongful acts were the result of any affirmative action being taken by Shorton; instead, they were the result of several alleged failures to act. The plaintiffs appear to. argue that in the circumstances, Shorton’s alleged wrongful acts were continuing. Under this theory, Shorton would be covered by the policy because the acts would have occurred, at least in part, after the prior acts date.
The plaintiffs’ argument is clearly unavailing as to the first two alleged wrongful acts (failure to prepare the three tax returns and failure to evict the tenants). With respect to the claimed failures to prepare tax returns, the plaintiffs’ complaint refers to filing deadlines and alleges penalties and interest being owed by the estate as a consequence of Shorton’s missing those *260 deadlines. Plainly, the wrongful act asserted by the plaintiffs occurred at the times the three tax return filing deadlines came and went; these dates were all well before March 1, 1996. It is true that penalties and interest may continue to accrue and therefore the harm allegedly caused to the plaintiffs by Shorton’s wrongful act may continue to grow. However, this fact does not change the date of the original wrongful act. Cf. Carpenter v. Texaco, Inc., 419 Mass. 581, 582-83 (1995) (rejecting claim of continuing trespass or nuisance based on continuing presence of gasoline on plaintiffs’ property after a single encroachment had occurred).
Similarly, Shorton’s alleged wrongful act in failing to evict the tenants from the estate’s property also occurred well before the prior acts date. This alleged failure resulted in the property being foreclosed upon and being sold at auction on May 21,1991. The damage here, then, also occurred before the prior acts date. Consequently, the policy will not cover Shorton for this act.
It is not as clear when the second two alleged wrongful acts occurred for purposes of the prior acts date. As far as Shorton’s alleged failure to collect the unsatisfied judgment is concerned, the point at which the non-collection became a “negligent act, error or omission in . . . the rendering of or failure to render, professional services” cannot be pinned down specifically. In this situation, the question is whether Shorton acted as the average qualified attorney would have acted in the circumstances. Although there may not be a single date on which to focus, reason compels the conclusion that where an attorney obtains a judgment in November 1993, his alleged conduct in not taking any steps to collect on the judgment would qualify as a “wrongful act" — a negligent failure to act — at a point substantially before the prior acts date of March 1, 1996, which was over two years after the judgment issued.[3]
The same is basically true of Shorton’s alleged negligence in connection with locating the decedent Publicover’s coin collection.[4] The plaintiffs state they retained Shorton to perform this service immediately after Publicover’s death in 1990. While the record does not permit one to identify a precise date on or by which Shorton’s alleged failure to undertake any steps to find the coins qualified as a negligent “wrongful act,” certainly by March 1, 1996, that date would have come and gone.
In sum, I conclude that all of Shorton’s negligent or “wrongful acts” of which the plaintiffs complain first occurred before March 1, 1996. Accordingly, under the clear terms of the policy, CCC is not obligated to defend or provide coverage to Shorton in connection with this lawsuit.
Shorton asserts two counter-claims against CCC in this case: (1) abuse of process, and (2) violation of G.L.c. 93A. CCC has moved for summary judgment on these counterclaims, and Shorton has not opposed the motion. For the reasons stated by CCC in its supporting papers, the motion will be allowed.
ORDER
For the foregoing reasons, the motion for summary judgment of the plaintiff-intervenor Continental Casualty Company (CCC) on its claim for declaratory relief is ALLOWED, and the motion is also ALLOWED on the counterclaims against it which have been filed by the defendant. It is further DECLARED that CCC is not obligated to defend or indemnify the defendant John B. Shorton under the lawyers’ professional liability insurance policy it issued to him in relation to the claims which the plaintiffs assert against Shorton in their complaint.

The amendment further states that
all claims whenever made, shall be considered first made during the policy term in which the earliest claim arising out of the same or related wrongful act was made, and all such claims shall be subject to the same limit of liability.

It might perhaps be argued that the plaintiffs do not have a viable claim against Shorton in relation to the non-collection of the judgment because the plaintiffs remain able to collect on that judgment at the present time. See G. L.c. 260, §20 (creating a rebuttable presumption that judgments have been satisfied after 20 years). However, CCC does not argue the point. Rather, CCC stmts from the premise that the plaintiffs have alleged viable malpractice claims against Shorton. I accept this premise for purposes of this motion.

I assume, for purposes of this motion only, that the task of locating the coins in connection with settling the estate constituted “professional services” within the meaning of the policy, so that a negligent performance or failure to perform such “services” would be a “wrongful act.” (See note 3 immediately above.)